2015, 5059. Ms. DelSole. Good morning. Can't please the court. This appeal requires the court to decide whether interest netting was permissible in two test scenarios involving merged entities. Section 6621D of the Internal Revenue Code, which is the statute that authorizes the netting at issue here. Before you get into your argument, can you just explain to me or maybe let me try out and see if I really understand what this netting is. The netting has to be the overpayment interest running and the underpayment interest running has to be the same exact time, right? Well, they could overlap. Right, but you only get it during the overlap period. So you can't say have an overpayment that ran from January was resolved in March and then have an underpayment that started in May and was resolved in July and net those two against each other. That is correct, Your Honor. They have to overlap or run simultaneously. But I think one of the important things about the statute in terms of what it changed from prior law is that they don't have to be simultaneously outstanding in the sense that you could have an overpayment that ran from January to March and pay it and then subsequently discover that there was also an underpayment that ran from January to December. But for purposes of this statute, the period we're looking at is the overlapping period. That is correct, Your Honor. And what 6621D requires for the netting to be allowed is that the overpayment and the underpayment be made by the same taxpayer. We think the Court of Federal Claims erred in both the test scenarios here because, in fact, we didn't have the same taxpayer making the overpayment and the underpayment. That's what I'd like to ask you about because I think that it seems like under Energy East you're probably right because Energy East looked at who made the underpayment or the overpayment. But isn't the point of this statute about the netting period and who's responsible for the interest during the netting period? And in a post-merger world, regardless of who made the underpayment or who made the overpayment originally, the new entity is going to be responsible for paying the underpayment interest and are going to be allowed to get the overpayment interest back, right? So why shouldn't they be allowed to net? Well, I think this is an important point that the Court of Federal Claims overlooked that this Court made clear in Energy East, which is the binding precedent. And there the Court said not only do you have to look at the particular point in time when the overpayment and the underpayment were made and compare the taxpayer at that point, but it rejected, this Court rejected the argument that it was a follow the liability kind of statute. So whoever inherited the liability and the right to the overpayment was entitled to netting. And the Court said, no, you have to look at the particular time when that occurred. And I think there's a reason for that. I understand that, but this is what was a little fuzzy to me about Energy East, whether it was relying on that alone or whether it was also relying on the fact that in Energy East, taxpayers who were consolidated would still retain their separate corporate entities. I think particularly, I think that that was not the focus of the analysis in Energy East because that same argument was made in Energy East, the taxpayer argued that the consolidation made them the same taxpayer. And the Court said, we don't have to reach that because we look at... But that's really the principal point of your brief in that case, that consolidated taxpayers aren't the same taxpayers. But whether they, I mean, and our position would be that they're not, but whether the Court didn't reach that because it said you look at the time the overpayment and underpayment was made, not whether the same taxpayer ultimately ends up being responsible for... Do you see a difference between the consolidated taxpayers in Energy East, setting aside the rest of it, and the merged taxpayer? If we were just looking at an overlapping period after the merger, they would be the same taxpayer. Well, I'm not sure that's correct, Your Honor, because in this case, in this situation, what you have to compare in situation one is the entities before the merger. No, no, I don't mean that. I'm sorry, I'm not clear. There's so many hypotheticals. Right. And then the second, you know, the second... But what I'm saying is, if you have this big, long, complicated merger, and after the merger happens, that company has, makes an underpayment or an overpayment, they're qualified for netting. If there's a merger, and after the merger, both the overpayment and the underpayment were made by the surviving corporation after the merger, that would be the same taxpayer, but that's not the case. Let me ask you a hypothetical then about Energy East, though. If after the consolidation, one company makes an overpayment, another consolidated company, but still a separate corporate entity, makes an underpayment, would the government's position be that even though they're consolidated, they're still separate entities, so you don't net? Or would you allow netting because they're now a consolidated company, and the underpayment and overpayment were made afterwards? Well, it's not this case, Your Honor, but I think that, and I think that is a, I think our position would be, depending on whether you could trace the overpayment and the underpayment to the entity with the same taxpayer identification number, and I think that's the, that's basically what the Magma Court would look at. I'm just trying to ask whether you would treat consolidated companies differently than merged companies. Well, I think it, I think there is, you know, the merger, everything is one company, and if everything was post-merger, then it would all be one company, but I think if it's a consolidated company, first of all, there are different elections that could be made by the company to either be, to file consolidated returns or not, and they could change that from year to year, and so I think there would be more, what the government's position has been in the context of what the Magma Court held is that there would have to be some sort of tracing element, so I think there is a difference if everything happens post-merger, but I think what we're dealing with here is a situation where either everything's pre-merger, which I think is just like Energies. This case is indistinguishable from Energies, and then if you look at what happens in our Situation 3 in this case, you're comparing a pre-merger entity with a post-merger entity, and I think there's really no basis for holding those of the same taxpayer, and I think the reason Congress might have chosen the same taxpayer language, which does restrict who can net and doesn't sort of have a follow the liability and follow the transfer of assets and liabilities approach, is because there's a long history of Congress not wanting to encourage trafficking in tax benefits as a reason to merge, and Section 381 of the Code is an example of that. Congress was responding to trafficking net operating losses, and Congress was very well aware of how, you know, as the Treasury report demonstrates, we talk about in our reply brief about how they could have worded a statute to follow the liabilities and the assets and the netting would have followed, but they should not have. Well, that seems to be a good reason to not allow retroactive netting before the merger, but after the merger, that entity, despite what happened before, continues to be on the line for the underpayment and overpayment interest and gets hit with the penalty until it's resolved. Well, but on the other hand, it's a reason why a company might actually go shopping for a merger, because if you have a company with a large underpayment pre-merger that, you know, found out about years later, so years have passed and lots of interest has accrued, that's a reason for them to go out and shop for a company that they can acquire that has a big overpayment that can offset that interest, and the same taxpayer language prevents that being a motivation for a merger. And so I think there's a reason Congress would have chosen to do it that way, and so they specifically chosen the same taxpayer language, which this Court said in Energy East means you have to compare the entity at the time of the underpayment and the entity at the time of the overpayment, and as I said, I think Situation 1 is indistinguishable from Energy East, and I think... Can I ask you about Situations 2 and 3? Mm-hmm. So in Situation 2, you agree that that is the same entity, pre-merger and post-merger entity is the same, but in Situation 3, you do not, and I'm having trouble with that. Well, I think same can have two meanings. It can mean completely identical, or it can mean the same in certain relevant essentials, and those are the same in relevant essentials, or key factors being the same, or completely identical, or the two... Completely identical being the same as can, or what? Exactly the same. No, I mean, completely identical would be what the lower court in Energy East said should be the test. It's like exactly the same, and we haven't argued for that because we don't think corporations are ever exactly the same from year to year, that they change with time, as the Magnet Court pointed out, but we think the TIN really is, under the code, the unique identifier of a taxpayer, and so we think the fact that between... In Situation 2, the one that we conceded, that the TIN is the same, which is really the key factor. It's the identifier of the taxpayer, and we would urge that that is an administrable test. Congress has repeatedly urged that the IRS adopt the sound administrative practice, and we think that whether the TIN is the same, it was the approach adopted by the Magnet Power Court, and it gives an administratively manageable approach that lets you know predictably whether... Is it arbitrary, though, in that it just really matters on which one is the postman, which one's acquired, and which one's the acquirer? Well, I think that it gives the taxpayers the freedom to choose how they structure their transaction, to some extent, but I think it's really the only way of giving a predictable analysis, and we have posited in the alternative that another way of looking at it would be at least to let the TIN be one major factor, but also that you might look to whether the businesses were the same, but I think either of those analysis, the court of federal claims didn't reach the right result in this case, in hoping that they were the same taxpayer. The court below seemed to conclude that somehow a merger makes the merged entities the same taxpayer, just automatically by operation of law, and there's really no law that supports that proposition. The cases the court of federal claims cited talk about a merger causing one to be drowned in the other, or stepping into the shoes of the other, and as the First Circuit talked about in the Newmarket case, these are really metaphorical terms, and when you look at the case under state law, what actually happens is that assets are transferred from one entity to another, and that that's not something that makes entities the same taxpayer, and I think if you look at federal tax law, it's really inconsistent with the idea that a merger can make a pre-merger or acquiring corporation the same taxpayer as the acquiring corporation, because basically the acquiring corporation continues on, and the acquiring corporation ceases to exist, its TIN is terminated, it files a short year return for its income prior to the merger and the year of the merger, it's not like at the end of the merger year they file one return together, the company that ceases to exist files its final return, its TIN comes to an end, and then section 381 contemplates specifically that in a merger you're transferring entities from one entity to another. And I guess the Metropolitan Edison on which the tax, which Wells Fargo relied, I think simply doesn't stand for the proposition that a merger makes entities the same taxpayer, if it ever did, it's displaced by 381. Let me ask you about situation 3 again. I'm sorry, situation 3? Situation 3, because it does seem that it's very close to situation 2, and it would have been situation 2 if in the first union, core states merger, they just designated core states the acquiring company, right? Assuming that the TIN test is the test, Your Honor. Right. Rather than looking at the bigger business, yes. And why should we make that matter, given that one of your reasons for why we need to look at who made the underpayment and overpayment is Congress didn't want to encourage people to acquire companies to offset underpayments. That doesn't apply in situation 3, because the underpayment that first union is seeking netting for occurred well after the acquisition of core states. It's not like situation 1, where both of them were before the thing. So the rationale of, you know, purposeful acquisitions doesn't seem to apply to situation 3. Well, I think, Your Honor, that certainly tax planning can have forward-looking aspects to it. And also, I think that just simply there's no basis in the law, as I said, for the idea that a pre-merger entity can be the same taxpayer as a post-merger entity. It's contrary to 381, which contemplates the idea that only certain attributes transfer from one to another. The concept of there being a particular TIN and an annual system of accounting, there's really nothing, it's very inconsistent with the tax law. And in particular, the state statutes that allow, some of the state merger statutes allow merging two different types of entities that would be under two different tax regimes. And to say, for example, if a limited partnership merged with a corporation, or LLC, which would be treated under the partnership tax regime, was merged with a corporation, and then they went forward as a corporation, you would be saying that something that was taxed as a partnership was the same taxpayer as something that was taxed as a corporation. And I think that creates a whole different realm. Counsel, you've used most of your rebuttal time, but we'll give you two minutes back. Thank you very much, Your Honor. Mr. Kafka. Good morning. May it please the Court. I'm Jerry Kafka. I'm here representing Wells Fargo. The resolution of the issue of the meaning of the term, same taxpayer, in this case, involving a merger, is instructed by three separate but very complementary legal principles. First, the legal effect of a merger. Second, the operation of 6402, which is the precursor to 6621D, and remains in effect and was applied here to the very same situations that we're talking about in those contexts. And third, the authority and the practice of the IRS, where there is an underpayment and an overpayment situation in a merger, to look only at the successor corporation in collecting that underpayment or refunding that overpayment. Indeed, in this case, by its rules, the IRS required Wells Fargo, as it did, to file a claim in its name with respect to these amounts. The successor corporation, as the Supreme Court and other courts have said, is the successor, steps into the shoes, not just for the assets and the liabilities, but the history. Let me address, before I go into any of those, the Energy East case, because it is out there and we have to deal with it. We don't disagree with the result on those facts, but we have very different facts and a very different legal situation here. Factually, that was a contractual acquisition. It was not a merger, which operates by operational law. The three corporations, all three of them, the acquirer and the two subsidiaries that it acquired, all remained in existence. Yes, they did elect to file a consolidated return. I understand that. It's a very good factual distinction. But I've read that case several times in preparation, and it does not seem to me that the holding in that case rests on that factual finding, that the entities in a consolidated merger aren't the same taxpayer. It seems to rest on the finding that you look to the date of the underpayments and the overpayments to see whether they're the same taxpayer. The difference here is the legal effect. In a merger, what the state laws have said, what the Supreme Court has said, what the IRS says in its regulations under 368, the merger provisions of the Code, a merger means by operational law, the assets and liabilities transfer become those of the, including tax underpayments and overpayments, become that of the successor. And the merged company ceases to exist. How does that work with Situation 1, where you look at the time of the overpayment and the underpayment, and it's pre-merger? The history also passes. The best example, perhaps, that we cited in our brief... Is your argument basically that once you have a merger, any entity that's merged into that company is retroactively considered the same company? Yes. And that is what the court down below said, Judge Firestone said. That following a merger, the law treats the acquired as though it had always been part of the surviving entity. The IRS has said exactly the same thing in published rulings as well as in its private rulings. In the published ruling, 62-60, involving employment taxes, it addressed the issue of what is the effect. They used the very term, same taxpayer, in addressing the successor corporation. They said there is no predecessor-successor relationship in a statutory merger but one continuing taxpayer. That's what we are saying. Whether you have taxes or whether you have punitive damages, as was the case in Silvatex, for example, outside of the tax area, the successor is liable for those, even when it is a unique liability. Let me ask you this hypothetical. If you have two separate entities that had overlapping underpayments and overpayments that were ultimately merged, and these were before the merger, they were completed before the merger by the separate companies and they were acquired by a new company, but the statute of limitations hadn't run on seeking refunds, could you seek a refund based upon netting these two acquired companies that had overlapping periods? I think you are positing very close to Situation 1. My short answer with that... With Situation 1, I understand that the interest is still running. My hypothetical is the interest is not running anymore. It's been refunded. The overpayment has been refunded to one company with interest. The underpayment has been paid. Interest has been paid to the government. But because they are overlapping and because there is a statute of limitations that allows you to seek refunds, this new merged company goes back and looks at the books and says, look, we can net these two companies that were completely separate at the time but are now, under your legal theory, considered the same company and seek a further refund. Let me answer your question two ways. First through the back door and then through the front door. Through the back door, in that situation, if these were outstanding liabilities under 6402, the IRS would apply interest netting. In its discretion, it can do that. It does that and there is no question here that that isn't their practice. I'm sorry, I'm not a tax lawyer. What do you mean by outstanding liabilities? In other words, if the amount of the underpayment and overpayment had not yet been paid, they were outstanding. That's not my hypothetical. But no, my point though is 6402 was the predecessor and indeed was cited multiple times in legislative history. The Treasury report looks at 6402 and says there is really no difference from a policy matter or from an implementation matter to do this. They said it would be exactly the same to enact 6621D as the service was doing under 6402. That's the back door. The service has already done this and indeed in this case, it stipulated for situations one, two, and three, the government has applied interest netting where the balances were outstanding. Now to answer your question in terms of the front door, the history follows. In other words, when one becomes... The short answer is yes. You think that a company, if it's going out and acquiring two separate companies, can look back and as long as the statute of limitations hasn't run, can seek a refund based upon interest netting of closed tax years. And the IRS itself has so ruled in very many private situations. I would direct the court's attention to a field service advice just a couple of years after enactment, 2002-12-028. They went through, not in a casual way, but in a very detailed way looking at nine situations. Situation five was situation one. And they said specifically that the successor corporation, I'm quoting, is entitled to file a claim for interest netting because it's entitled to the merged corporation's pre-merger over and under payments. And then in what I would call administrative dicta, it then went further and said if the acquired corporation was still in existence, i.e. the energy situation, after the successor corporation acquired it, then the successor corporation would not be entitled to an interest netting. In other words, they drew the distinction saying in Energy East, we should win. We agree. They said in a merger, it's different. And they're relying on all of these authorities that they routinely rely on on a daily basis against hundreds of corporations saying the successor corporation is liable for the taxes and under 6601E, the interest follows the taxes and must be treated the same for the interest. If the IRS is collecting from the successor corporation the underpayments of the merger company and it requires the successor also to file any claims for refund for any overpayments made by the merger company, it's very difficult to understand how you can draw a distinction. Well, that seems to make sense for post-merger netting periods because you continue to be liable or, I mean, you are now solely reliable for the interest overpayment and will get the allowable interest back. But the hypothetical, I ask you, when it's closed and you're just going back in the books to seek an additional refund seems to run right into what your friend was saying, you shouldn't favor policies that allow structured mergers and acquisitions to basically buy tax benefits. But what the IRS has said, again, I'm going to refer to the 62 ruling and there are others, we cite them in our brief, but the 62 is the closest where they use the same taxpayer in a merger and they say it is a continuation of that taxpayer. It is the same taxpayer. They're not making any distinction between pre- and post-merger events. Having said that, let me turn my attention, if I may, first to the effect of the statute. What the statute did when it was enacted, Congress very carefully, and it was a remedial provision intended to alleviate the burden that it had created over the course of the prior eight years establishing and then increasing an interest differential for corporations between overpayments and underpayments. They said if they're outstanding at the same time it shouldn't happen and oh, by the way, we know that you, the service, allow this under 6402. We want you to do that here as well. Service said no, we can't, we need statutory authority. Treasury looked at it and Treasury said there's no reason not to. We should do this, we support the statute and we will follow your directive that you stated to us four times in legislative history from 86 through 95 that said each time we ask that you impose and direct and implement the broadest, most comprehensive interest netting possible akin to 6402. They specifically cited 6402. Let me go back to what I said earlier because I think it really is a critical point here. Under 6402 interest netting is allowed. Indeed, Congress had to amend 6402 when it enacted 6421 to make sure if there was an overlap between the two provisions 6621D applied because it was broader. It was not limited to being perspective in effect only. It was applicable to all open statute limitations when it was enacted. So it was not a let's see what happens in the future. Congress was presumed to understand when it did all that the way merger has been dealt with by the service. Indeed, as I said, were it not the situation where the service looked to the successor, it would have to seek either through transfer liability or other mechanisms an attempt to try to chase the liability of the merged corporation. It is no longer in existence. Its assets and liabilities became by operation of law the assets and liabilities of the successor. Can I ask you about Energy East again? Do you think it can be would you agree that a consolidated company is not the same taxpayer? Yes. So so even if they're consolidated you can't net one company against another independent corporation within that consolidation thing? Consolidation does not make one the same taxpayer. No. It is merger. It is the by operation of law and what the Supreme Court the state courts the IRS and the Israelis have always said it is a continuation of that merged company. It is one and the same. This is a provision while it is unique and for the first time the service or the code uses the word same taxpayer but the service had used that same phrase a number of times in its prior rulings dating decades prior and it had applied 6402 to merged and successor corporations pre and post merger to allow netting as long as the balances were outstanding and that is a provision Congress said we like the way it works we want to extend it to balances that are not outstanding and we are going to extend it to all taxes not just income taxes and we are going to make it Why doesn't Lipson apply here? I mean he didn't address same taxpayer but went to a similar situation or similar question and addressed that they had to be the same business entity why wouldn't that apply here? Lipson predates section 381 and Lipson was a case that the taxpayer was the government was arguing not to allow a net operating tax attribute under 381 should be used by a successor corporation it expressly excluded and chose not to deal with one of the two arguments the government made first argument the government made was it wasn't a continuation of business the second argument was if you should not apply metropolitan because we just don't I think it's right notwithstanding being a unanimous  what Supreme Court said in Lipson was it was unnecessary to discuss that issue since an alternative argument made by the government is positive in this case so Lipson expressly kept in place metropolitan metropolitan Edison was very precise in saying we accept for federal purposes the state law effect and again that is now being replicated in the IRS regulations under 368-2B that says a merger by operation of law moves the assets and liabilities so that they become those of the successor corporation not just the amounts but the history whether they be punitive damages or whether they be a tax underpayment the other thing I would point the court's attention to is revenue ruling 58-603 where the IRS itself said we will not apply Lipson any further in a situation that is covered by 381 if we were to reverse how significantly would that impact the way companies choose to structure mergers if we were to reverse on either situation 1 or situation 2 the government has suggested that somehow this would cause tax planning or windfalls keep in mind this is a provision to alleviate an interest differential that was created by Congress it was not to it does not create any benefits what it is doing is dealing with the time value of money you have a situation where the amount paid to the government is nearly 5% greater than the amount the government pays back to the taxpayer over the same period of time and they're saying that really shouldn't work that way when they're outstanding well that seems to make sense for postmerger netting or premerger netting that continues to run or premerger underpayments and over that continue to run into the postmerger period but it doesn't seem to make sense to me when two separate entities one had an underpayment that was to seek a refund when that unfairness because it's all about the unfairness wasn't present because those two companies weren't the same and isn't unfair to you because you're not being subject to that conflicting interest the difference and it is the primary difference from Energy East is that in the Energy East situation those companies remained in existence the government could still chase them and indeed had to chase them for their underpayments and overpayments but pre or postmerger in a merger situation in a merger situation such as we have only one corporation remains and that is too No, I understand I'm not sure that you're that I think you understand my hypothetical but you keep blurring it into where the obligations are ongoing and the interest keeps running I understand you have it seems like you have a pretty good argument on that point but it seems you're also when you at least answered the prior hypothetical that said these two prior companies that were acquired had completely separate underpayments and overpayments that were overlapping but they were resolved so the acquiring company has no obligation and both were paid right so one company got the refund on the overpayment the other company paid the refund  were completely separate companies against each other the acquiring company is not suffering the interest penalty for either of those two companies it is though because it is now liable for that so it is subject to but it has but they became the same company they the successor the successor also it seems to me like you're asking for more than you need to ask for to win your case all I can tell you your honor is again that's what the IRS has said and is published and non-presidential private rulings we agree with that analysis we think it should be continued here thank you Mr. Kafka Ms. Delso will give you three minutes of rebuttal thank you your honor why isn't energy use just different because does it involve consolidated companies and not a merged company I mean it does seem to make sense that the IRS has treated merged companies differently than consolidated corporations well I think first of all to the extent that Mr. Kafka discussed informal rulings those are not precedential and what does bind this court is energy use the question is not who inherits the liability but rather comparison of the taxpayer at the time the overpayment and underpayment were made and in both situations you leave open the question of what is the same taxpayer well situation one I think is exactly like energy use they were both entirely separate at those particular times you look at that window in time and at that point they were separate and what energy said is that the court declined to rewrite the statute to say that netting was allowed if interest was payable by the same taxpayer so if ultimately the same taxpayer down the road or what became the same taxpayer or through transfers it ended up in the hands of the same taxpayer that wasn't the question the question was did the same taxpayer make the overpayment and the underpayment and you look at that window in time but Energy East really never had to answer that question because they never became the same taxpayer well I think the court said it doesn't matter isn't that dictative perhaps but I think the analysis of the statute is consistent with that result and I think because the court didn't reach that question I don't think it isn't dictative because if they didn't reach that question they found it was unnecessary to decide that because they could have concluded as Energy East argued the consolidation made them the same taxpayer but they didn't reach it at all and I think the court said all we look at is what really matters and I think the other thing about merger is that there is inheriting the history and if you look at the merger statute that's not what happens there is transfer of companies I mean if they became the same taxpayer you would see routinely that for the year of the merger they would file one return as opposed to two separate returns as I might be different when you have the benefit of the two of them but what Congress provided is that it sets forth a regime where things are transferred from one to another and it makes clear that this statute contemplates that they have to be the same taxpayer of the outset not just that the overpayment and underpayment rights and liabilities end up in the same hands and I think that there's nothing that indicates the nature of a merger as otherwise and 381 supersedes that earlier law and the reason that there's been nothing more on that is because 381 makes that clear and I think that Metropolitan Edison could be read as suggesting that merger makes entities the same taxpayer as we lay out in our brief that's a really questionable proposition in the tax court so your red light is on and so take the argument and take the case under